JAMES W. WALTON *v.* STATE OF MISSISSIPPI.

[39 South. Rep., 689.]

1. CRIMINAL LAW AND PROCEDURE. *Continuance. Code* 1892, § 1425. *Absent witness. Admission.*

Under Code 1892, § 1425, regulating the subject, a defendant in a criminal case is entitled to a continuance where necessary to obtain the testimony of an absent material witness, who has been subpœnaed and is absent without his consent or procurement, if the attendance of the witness can probably be had at the next term, although the state offers to admit that the witness would testify as claimed.

2. SAME. *Reserving witness for rebuttal. Cross-examination.*

Where the state in a murder case reserved a witness to the homicide and introduced him only in rebuttal:

(*a*) He is subject to full cross-examination, and it will be error to confine defendant's cross-examination of him to matters in surrebuttal; and

(*b*) He may be asked on cross-examination if he had testified at defendant's committing trial.

3. SAME. *Improper statements by counsel.*

Improper statements by counsel, assigned as a ground for a new trial, cannot be considered on appeal where the record contains no proof that they were in fact made.

4. SAME. *Homicide. Instruction. Assumption of fact in dispute.*

An instruction which assumes as true a controverted matter of fact is erroneous.

5. SAME. *Evidence. Statements.*

In a murder case statements, other than dying declarations, made by the decedent after the fatal shot are inadmissible in evidence.

FROM the circuit court of Madison county.

HON. DAVID M. MILLER, Judge.

Walton, the appellant, was indicted, tried, and convicted for the murder of his wife, and appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

The state's instruction No. 10 was in the following words: "The court instructs the jury that while no living eyes, save those of the defendant and the slain woman, may have looked upon the tragedy which ended Mrs. Walton's life, yet, if the jury believe beyond a reasonable doubt from the facts and circumstances and the dying declarations of the deceased, made under a sense of impending dissolution, and admitted by the court as evidence in the case, that Mrs. Walton came to her death at the hands of her husband, the defendant, when she was doing nothing to him which would evince to a reasonably prudent man, situated as he was then, that his life or his person was then and there in imminent danger at her hands, and that he willfully and deliberately killed the deceased, when he was in neither real nor apparent danger of losing his life or of great bodily harm at her hands, then he is guilty as charged, and the jury should so find."

*J. W. Cutrer*, for appellant.

It was error on the part of the court to overrule the application of the appellant for a continuance of his cause because of the absence of the witness Missouri Franklin. This witness was under the process of the court. She had first been summoned as a witness for appellant on the 9th day of August, 1904, and had been in attendance upon the court ever since until the time the case was called for trial.

This motion was made on the 16th day of January, 1905, and set forth that appellant was advised that the witness was sick in bed; that she was a resident of the county; and that her attendance could be procured by compulsory process, and the affidavit asked for compulsory process.

The facts which were sought to be proved by the witness were of the most material kind, and were facts which could not be proved and which were not proved on the trial by any other witness.

The court overruled the motion for continuance and forced the appellant to a trial upon the statement of the district attorney that he would admit so much of the testimony of the witness as was determined to be competent to be read to the jury from the application for a continuance in lieu of the presence of the witness. To this action of the court appellant excepted.

It appears that the witness continued ill during the remainder of the term, and was not able to attend the court at all, although other process was issued for her; nor was appellant able to secure the attendance of the witness upon the motion for a new trial, nor to secure an affidavit. *Whit* v. *State,* 85 Miss., 208 (s.c., 37 South. Rep., 809); *Montgomery* v. *State,* 85 Miss., 330 (s.c., 37 South. Rep., 835); *Scott* v. *State,* 80 Miss., 197 (s.c., 31 South. Rep., 710); *Watson* v. *State,* 81 Miss., 700 (s.c., 33 South. Rep., 491); *Caldwell* v. *State,* 85 Miss., 383 (s.c., 37 South. Rep., 816).

The court erred in admitting incompetent evidence over the objections of appellant.

The dying declaration testified to by Dr. Jones, as witness for the state, was in large part incompetent. While it may have been competent for the witness to have testified that the deceased told him that appellant had shot her, it was not competent for him to be permitted to testify further that the deceased said that appellant had shot her to get her out of the way. The alleged statement of the deceased, as testified to by the witness Jones, was a mere expression of her opinion, and, therefore, the same was clearly incompetent. *Lipscomb* v. *State,* 75 Miss., 559 (s.c., 23 South. Rep., 210).

There were three state's witnesses in attendance who must have known more of these facts than any one else, and who would not have colored them in favor of appellant. There were two daughters, Mary and Ella, and a son, Joseph—the issue of the deceased by a former husband. These were called and sworn and kept in attendance upon the court, and the two girls were

ultimately placed upon the witness stand as state's witnesses. After their examination by the state, they were turned over to the appellant for cross-examination, and then transpired what a participant in the trial cannot but feel was the culmination of a series of rulings which were most antagonistic to appellant. In the course of the cross-examination the witnesses were asked if they had not at once upon the alarm gone to their mother, and if it was not true that the first words which she spoke to them were to tell them that she knew that she was mortally wounded, and that to their inquiries she had responded, freely and voluntarily and repeatedly, that she had shot herself.

The doors of the temple of justice should not be closed in the face of the truth. Truth should enter in, and not be objected to and excluded at the threshold.

Instruction No. 10 assumes as its predicate that no eyes, except those of the deceased and the defendant, looked on the tragedy which ended her life; in other words, the plain assumption was stated, and the jury were told in language the import of which no sane man could mistake, that the defendant was present when the deceased was killed and that he killed her, and that they should find him guilty as charged—that is, that he must be hanged—because to follow the language of the instruction the evidence showed that the deceased was doing nothing to the defendant, or, *e converso,* the evidence did not show that the deceased was doing anything to the defendant, which would evince to a reasonably prudent man, situated as defendant was, that his life or person was then and there in imminent danger at the hands of the deceased.

*J. N. Flowers,* assistant attorney-general, for appellee.

The court below did not commit any reversible error in refusing to allow the defense to cross-examine Mary and Ella Jenkins as to a matter which had not been brought out in the examination in chief of these same witnesses and was not in surrebut-

tal.   It was, perhaps, wrong for the court not to allow this cross-examination.   But it is a sound rule that persons coming into this appellate court must make it appear, not only that error was committed in the court below, but that such error was prejudicial or harmful, and that the effects of it could only be avoided by an appeal to this court.   This is reasonable.   It prevents counsel from sitting by and watching errors creep into the record without trying then and there to avoid the effects of them and without making it appear that they are errors in substance as well as in form.   It requires litigants to exhaust their remedies and resources in the trial court.   It prevents them from attempting to cover up reversible errors in the record in order that time may be killed with an appeal.

There is no reversible error in the instructions given for the state.   They are numerous and in some respects erroneous.   But all the errors were cured by the instructions for the defense. We ask the court's special attention to these instructions for the defense, to their thoroughness and completeness.   They suggest to the jury every possible excuse which might be accepted to warrant a verdict of acquittal; they give the defendant the benefit of every rule of law which makes it difficult for the mind of a juror to be altogether certain of its conclusion; they show how small a thing a reasonable doubt may be; they show how overwhelming conclusions of guilt must be; they clothe the man on trial with the presumption of innocence, and then they tell the jury that the presumption of innocence is evidence in behalf of the accused; they go still further and tell the jury that they may regard the presumption of innocence just as if a living witness were present testifying to his innocence.

The question in this record which will, perhaps, receive the most serious consideration of this court is based upon the refusal of the trial judge in the court below to grant a continuance because of the absence of the witness Missouri Franklin.

As far as this record shows, the affidavit made by the accused

is purely conjecture; it is a mere statement that he expects to prove something, when it is made further to appear that he does not know whether he can prove it or not. He knows no one who is able to say that Missouri Franklin would testify to anything that would help his case; or if the defendant knew of any such person, he made no offer to have him before the trial judge to say that this absent witness was in possession of valuable information for the defendant.

This is another instance of the failure of the appellant to show his full hand in trial. Such procedure makes the trial of cases and the appeal here and the remand for a new trial a lottery business. This court would have to send this case back, if the judgment of the trial court should be reversed on this ground, without knowing whether Missouri Franklin would ever probably appear before any court and testify to the facts set out in the said affidavit. It would be permitting the accused to show part of his hand and require the rest of it to be conjectured. If he did hold a good hand, he should have shown it all to the trial judge. This court will not reverse and remand in order that this accused may have an opportunity to show something which he should have shown at the former trial and did not.

Argued orally by *J. W. Cutrer*, for appellant, and by *J. N. Flowers*, assistant attorney-general, for appellee.

CALHOON, J., delivered the opinion of the court.

Appellant was indicted, tried, and convicted on the monstrous and horrible charge of the murder of his own wife. She was shot in her bedroom about 4 o'clock in the afternoon, and died about midnight of the same day. From the character of the wound it must have instantly paralyzed her. She must have been in an erect posture when the shot was delivered, and she fell back across her bed and near the foot of it. The fatal bullet entered her left breast, went through her body, and was found in the wall over the foot of the bed across which she was found

just after the shooting. Its range seems to have been slightly upward; and, manifestly, she could not have been shot while sitting. The room opened on one side on a hall, and on another side on a gallery. It being a warm day, the doors and windows were standing open. The house was near a traveled road. Quickly after the explosion the appellant called to the children, near the house, that their mother had shot herself, and to come at once, and sent one of them, a boy, for a doctor. To the girl children who came in, she said she could not recover; that she had killed herself, but that "Jim [the appellant] had driven her to it." This statement she made several times afterwards to others as they came in. Subsequently, to her doctor and to others, she said that appellant had killed her; and this she persisted in. Two witnesses testified to threats made by him to her, and violent conduct toward her on the day of the killing, the credibility of which evidence is criticised by counsel, for reasons said to be inherent in it—because of contradictions, etc.—which we do not feel called on to consider, except to mention the fact.

Of course, the only defense set up is that it was suicide, and not murder. The effort was to show that the appellant was not in the room, but in the hall, when the pistol fired. There was seasonably presented at the first term an application for continuance because of the absence of certain witnesses, among whom was one Missouri Franklin. By her it was expected to be shown, among other things, that she was very near and in plain view of the house; heard the shot; saw appellant in or near the hall; then saw him, after the shot, enter the room and come out of it. This much was certainly competent. Nothing could be more vital to the defense than this, and it was error to overrule the application, which error was not cured by the announcement of the district attorney that he was willing to admit that the witness, if present, would so testify. At the first term the defendant was entitled to the continuance, where, as in this case, it appears that the witness could probably be had at the next term.

Code 1892, § 1425; *Stewart* v. *State,* 50 Miss., 587; *Scott* v. *State,* 80 Miss., 197 (31 South. Rep., 710); *Watson* v. *State,* 81 Miss., 700 (33 South Rep., 491); *Montgomery* v. *State,* 85 Miss., 330 (37 South. Rep., 835); *Caldwell* v. *State,* 85 Miss., 383 (37 South. Rep., 816).

It was, of course, fatal error to refuse to the defense the right to cross-examine the children of the deceased by her former marriage on the whole case. Two of them, Mary and Ella, were the first at the mother's bedside after the shot. They were witnesses summoned by the state, but reserved for rebuttal; were examined by the state, and turned over to the defense; and the court refused to permit cross-examination of these material witnesses as to the real merits of the controversy, because not in surrebuttal, and this, notwithstanding the state had been allowed to elicit from them testimony in chief. The defense was not even allowed to weaken the evidence by inquiring whether the witness Mary testified at the committing trial. This ruling is violative of the law which has been settled in this state for fifty years. *Mask* v. *State,* 32 Miss., 405. The object is to ascertain the truth, and the cross-examination should be permitted to be "coextensive with the issue," and this "on the clearest principles of reason and justice." In order to ascertain whether there is guilt, the same fair trial is the equal right of all men charged with crime.

In the motion for a new trial, certain remarks are recited as having been made in argument to the jury by associate counsel for the prosecution, and others by the district attorney. Of course, such remarks would necessitate reversal of any case where there was not a confession of guilt; but we cannot consider them, because there appears no evidence that they were in fact made.

The defense should have been allowed to cross-examine Mr. Hull as to whether he had conferred with Mr. Howell about the case.

It was error to grant to the state the instruction marked "No. 10." The commencement of it assumes as a fact for the state the only controverted point. It begins thus: "That while no living eyes, save those of the defendant and the slain woman, may have looked upn the tragedy which ended Mrs. Walton's life, yet," etc.

The statements made by Dr. Jones to the dying woman, and her opinion as to why appellant shot her, were not competent. It is enough to show by her dying declaration who committed the deed. Lipscomb's case, 75 Miss., 559 (23 South. Rep., 210, 230).

*Reversed and remanded.*