PREWITT v. STATE.

(Division B.   March 17, 1930.)

[126 So. 124.   No. 28465.]

732

J. M. Coleman and Leftwich & Tubb, all of Aberdeen, for appellant.

Forrest B. Jackson, Assistant Attorney-General, for the state.

**Griffith, J.**, delivered the opinion of the court.

Appellant was indicted on a charge of murder, was convicted of manslaughter, and appeals, assigning many grounds of error, the principal of which is as follows:

The state introduced the sheriff as a witness, showed by him, and apparently attached much weight to the fact, that after the homicide the appellant had taken flight, and that two days elapsed before the officers could locate him. He was then found at the home of a sister three or four miles from the court-house; it being further shown that the accused had sent word to the sheriff of his whereabouts, with a request that the sheriff come and get him, and that it was by this message that the sheriff obtained knowledge where to find him. In explanation of his apparent flight, appellant introduced and offered to prove by the witness Willie Gordan, to state the same in brief, that she is the sister of appellant, and that immediately after the shooting she met George Waldon, the father of the deceased, and that the father said, referring to appellant, that "he had better get away from here," and that "We are going to tear the damn house down and kill him," that the witness then ran home and told her brother that "George Waldon and a crowd said they were going to kill you and you had better get away from here," and that appellant immediately fled. Upon objection to this testimony, the court refused to receive it.

The authorities, however, as we find, are in complete accord that such a refusal is error.

"After evidence of flight has been introduced, evidence offered by accused which has some tendency to explain his flight must be received. Any fact is admissible in his behalf which shows that the reasons and motives for his flight were consistent with his innocence. He may show that he . . . fled on the advice of friends or because of threats," provided the threats have been communicated to him. 16 C. J., p. 553; 3 Ency. Ev., pp. 144, 145; Underhill's Crim. Ev. (3 Ed.), section 204; 2 Wharton's Crim. Ev. (10 Ed.), section 950. The only defense the state makes against this assignment is that the error became harmless or was cured by the fact that the accused, when afterwards on the stand, was permitted to testify that the threats were communicated to him, and that he fled on account thereof. It would be a strange doctrine which would hold that, because an accused has testified to a certain fact, no other testimony is to be received in his behalf in corroboration of that fact—that it is no error, or else is only harmless error, to exclude the corroborating testimony. Under such a doctrine an accused must either not testify at all, or, if he elects to do so, then he must stand alone. Such, of course, is not the law.

But there was some testimony, other than that of the accused, although of a fragmentary and indirect character, which in some measure tended to supply the facts which the rejected evidence of the witness Willie Gordan would directly have covered; by reason of which we have deliberated whether we might yet be justified in holding the stated error to be harmless. We are confronted, however, with the fact, not only that the case is close on the question of criminal guilt, but also with the further fact that there are several other errors apparent on the record; and, although as to these, if each of them was the only

error, none would be of sufficient seriousness to require a reversal, yet, when the error first above mentioned is considered together with all the others, the question then becomes whether the combined weight of all the errors must turn the scales. Of these several additional errors, we shall refer only to those which in their ultimate application have relation to the privileges of cross-examination.

It is of the utmost importance in the administration of justice that the right of cross-examination be preserved unimpaired. It is the law's most useful weapon against fabrication and falsehood. As a test of the accuracy, truthfulness, and credibility of testimony, there is no other means as effective. In this state, cross-examination is allowed coextensive with the issues, Walton v. State, 87 Miss. 303, 39 So. 689; not only, but it may proceed into the collateral circumstances surrounding, or in any way affecting, the transaction to the full extent that they have relevant connection by way of testing the memory, accuracy, sincerity, interest, or bias of the witness. In all these matters the privilege of counsel rightfully has broad latitude, and, to make it fully effective towards the purposes for which the law allows and favors it, the privilege should not be interfered with or hampered or restricted by the trial judge, except in clear case of irrelevancy, trespass beyond admissible ground, or extremes of continual, aimless repetition. 1 Thomp. on Trials, sections 406, 415-419. In several instances in this record, as it appears to us, the privilege was unduly and materially embarrassed by the trial judge; and this feature, taken together with the error first mentioned, makes it our duty, as we view it, to reverse the judgment and remand the case for a new trial.

Reversed and remanded.