274 So.2d 685 (1973)
John ISONHOOD
v.
STATE of Mississippi.
No. 47107.
Supreme Court of Mississippi.
March 12, 1973.
Powell & Fancher, Canton, for appellant.
A.F. Summer, Atty. Gen., by T.E. Childs, Jr., Special Asst. Atty. Gen., Jackson, for appellee.
*686 PATTERSON, Justice:
On February 9, 1968, John Rorer was robbed and fatally beaten at his place of business in Canton, Mississippi. John Isonhood was convicted of being an accessory before the fact to the robbery by the Circuit Court of Madison County and sentenced to serve thirty years in the state penitentiary. He appeals from this verdict and sentence.
In 1971 a grand jury of the county indicted Austin Whitaker, Jr., Tommy Lynn Smith and John Isonhood for the armed robbery of John Rorer. They were also charged by separate indictment with the crime of murder. The defendants obtained a severance and were separately tried in the following sequence.
Whitaker was first tried and convicted of murder, receiving a life sentence. Smith was then prosecuted for murder and this trial resulted in a mistrial. During the next term of court Smith was again tried for murder and was acquitted. Isonhood was then tried and convicted for armed robbery, receiving a thirty-year sentence. This sequence has some significance upon this appeal as the facts will indicate.
Whitaker testified during his trial that he had nothing to do with the robbery and murder. He swore that he had never been to Rorer's place of business, the Cash Oil Company, and that he had not collaborated or participated with either John Isonhood or Tommy Lynn Smith in the robbery or murder of Rorer. He also testified that he had never seen or been seen by Truitt Richardson at the Cash Oil Company on February 9, 1968. Whitaker denied making a confession which was introduced into evidence by John Myers, a Mississippi Highway Patrol officer. According to his testimony, he had been drinking beer, smoking marijuana, taking amphetamines and LSD on the day of the robbery and did not know where he was. The record indicates also that he had been convicted of possession of marijuana and was taken into custody on the present charges while confined to the Hinds County Penal Farm. He was positive, however, in response to the last question asked him by his counsel that he was relating the truth for the jury's consideration on his trial.
Subsequent to his conviction Whitaker filed a motion for a new trial preparatory to an appeal to this Court, which is pending in the lower court. He has remained in custody in the Madison County Jail from his murder conviction until this time.
Smith was tried on the murder indictment during the September 1971 term of the court which resulted in a mistrial when the jury was unable to agree upon a verdict. The record does not indicate that Whitaker testified for either the State or the defendant at this trial. The cause was continued, as was the case against Isonhood, until the next term of the court.
At the ensuing March 1972 term Smith was again tried for murder and was found not guilty by the jury. Whitaker testified for the State during this trial. On this occasion he swore that he, Smith and Isonhood had planned the robbery. He testified that he and Smith went to the Cash Oil Company and robbed and beat Rorer and that he had been seen there by Truitt Richardson. For these utterances, contrary to those given at his trial, the trial judge directed that the witness be bound over to await the action of the grand jury as a palpable perjurer.
Following Smith's acquittal this appellant was tried on the armed robbery indictment. Prior to trial, however, he filed a motion to suppress the anticipated testimony of Whitaker on the ground that he was a perjurer, having committed perjury within the presence of and to the judicial knowledge of the presiding judge, or in the alternative that the case be continued until the guilt or innocence of Whitaker as a perjurer could be determined. These motions were overruled.
During the course of the trial the evidence developed that appellant was a barber *687 and that his shop was only a few feet removed from Rorer's store building in which he was beaten and robbed. It indicated also that the home of the appellant's father and mother with whom he resided was directly across the street from the scene of the robbery. In fact, the defendant admits that he was familiar with the area and that he frequently visited Rorer in his store. He stated that he was aware that Rorer kept considerable sums of money on hand, but this knowledge was not unique since it was shared by others who traded with Rorer during his lifetime.
He further testified that on December 20, 1967, he injured his ankle when a shotgun accidentally discharged on a hunting trip and that he had been confined in hospitals until his release on the very day of the robbery.
When Whitaker was offered by the State as a witness, he was questioned extensively out of the jury's presence by the trial judge and his attorney, retained for the appeal of his murder conviction, relating to any offer or inducement to him in return for his testimony, and to his constitutional privilege of remaining silent. The court being satisfied in these particulars indicated that the witness would be permitted to testify. Whereupon, appellant's counsel questioned Whitaker and after establishing that the witness was jointly indicted with Smith and Isonhood for armed robbery, brought out the following: That he had been convicted of murder stemming from the same episode and in that trial had testified under oath that he had never been to the Cash Oil Company, that he, Tommy Lynn Smith and John Isonhood had never conspired nor planned to rob or kill Rorer, that he did not know and had never seen Truitt Richardson, that Truitt Richardson did not see him and could not identify him as being at the Cash Oil Company at the time it was robbed, that he had never made a statement to Patrolman Myers admitting participation in the crime, and when asked in the former trial "Are you telling the truth," he answered affirmatively.
He was then asked if he had not in the subsequent trial of Smith testified that he was at the Cash Oil Company on the night of February 9, 1968, that he, John Isonhood and Tommy Smith had planned the robbery, and that he and Smith went to the Cash Oil Company store and robbed and beat Rorer. He would not deny that he was seen and identified by Truitt Richardson at the coke machine in front of the Cash Oil Company on the night it was robbed. Immediately after answering these questions in the affirmative, the following colloquy transpired:
"Q. And did you not again testify in that same trial, the second trial, that your testimony which you were giving at that time under oath was the truth?
"A. Yes sir.
"Q. You testified to that?
"A. Yes sir.
"Q. Therefore Mr. Whitaker, you are guilty of perjury, is that not correct?
"A. I was just telling the truth.
"Q. But now you didn't answer my question, aren't you guilty of perjury?"

* * * * * *
"A. I haven't been convicted of it.
"Q. I didn't ask you that, I asked you aren't you guilty of perjury?
"BY MR. McINTYRE: Your Honor, I want to object also, I don't think that's proper. I don't think that's proof of conviction, he's not testifying here as to whether he's guilty or not guilty and we plead the Fifth Amendment as far as this boy is concerned here. That's highly improper.
"BY THE COURT: In light of counsel's argument I'm going to sustain the objection.
"BY MR. FANCHER:
"Q. Mr. Whitaker you did lie under oath in this courtroom, did you not?
"A. Yes sir."

*688 * * * * * *
"BY THE COURT: I am going to sustain the objection. The record speaks for itself in that he was ordered held by the Sheriff for action of the Grand Jury on a perjury charge.
"BY MR. FANCHER: I would like to move, following the testimony of this witness, it is apparent that he has lied under oath in this courtroom in two previous trials, inconsistent testimony concerning material and relevant facts in this case and under the laws of the State of Mississippi, a man who has done so is not qualified, he is not competent to testify any further under oath in any court and we respectfully move that he be not received as a witness and that his testimony be suppressed."
The motion being overruled, Whitaker testified before the jury that the robbery was planned by John Isonhood. His testimony was:
"Q... . tell the jury in your own words how this plan came into being.
"A. Well I was introduced by Tommy Lynn Smith to it and later on was told that there was a third party involved and it turned out to be John Isonhood and about a week before then I went to the Madison County Hospital where he was, I believe he was in the northeast or northwest wing in a private room."

* * * * * *
"Q. All right.
"A. And when I walked into the room, Tommy Lynn Smith and I, we saw John Isonhood, he was letting the blood circulate in his foot, it had been hanging down by the floor and I asked him how he was doing and everything, he said all right and ah, he said you know why you're here don't you, I said yeah, I know why I'm here, and so he pulled a diagram out from under his pillow that he was laying on and it was a brief diagram of the Cash Oil Service Station and he started going through the details of what was supposed to transpire.
"Q. What was, what was those details?
"A. Well, he said there was an old man there and he did not have a gun and that there was a safe there and that he usually carried up in the thousands of dollars in his pocket and there's you know, usually several hundred dollars in the cash register. And so ah, so we sit there and talk and I asked him, I said well how do you know all this and he said he owned a barber shop, ran a barber shop right next door and he saw him every day and that he knew when he had the money and where he had it, and I said all right. And so he started going through the details about it. We were supposed to go in the front door of the Cash Oil Company and ah, he told us there was a bolted door on the right side as you go in and that's what we were supposed to leave by."

* * * * * *
"Q... . What else did he tell you?
"A. Well he said that we were supposed to, after we had committed the robbery we were supposed to, I was supposed to give Tommy Lynn Smith the money and he was supposed to come back and we were supposed to all come back and split it up.
"Q. Now had, did he say anything else as to the details of the proposed robbery?
"A. Well, he had told us pretty much where to park and everything you know, and how to get to it and ah, you know, just the general lay out of where it was."

* * * * * *
"Q. Did you, Smith and Isonhood discuss the time and place this robbery was to occur?
"A. Yes sir.
"Q. The date was the date chosen?
"A. Yes, sir, that Friday afternoon. He was supposed to have gambled, I believe, the night before and had a lot of money on him.
*689 "Q. All right, did y'all discuss the choice of weapons to use?
"A. Yes sir, we did and Tommy Lynn Smith volunteered an iron bar, iron pipe or something like that, I told him no, I didn't want anything like that because you know, it would hurt the more, would hurt the man more than we intended to do and ah, I was thinking about backing out of it by then you know, and he said, no, Isonhood told me no, we couldn't back out of it because, you know, he didn't have any money the insurance paid his bills but they didn't, you know, pay his salary and he didn't have any money."
On cross-examination he again testified that about a week transpired from the time the robbery was planned in Isonhood's hospital room until the robbery occurred.
Whitaker was the key witness for the State. Without his testimony concerning the planning of the robbery there is no evidence to support Isonhood's conviction.
The testimony of Whitaker is subject to further doubt since the attorney for the defendant was not permitted to cross-examine the witness relating to his use of drugs and alcohol on the day he stated the crime was planned, being restricted on cross-examination to the day of the crime. A bill of exceptions signed by the judge states in part:
Prior to the introduction by the State and the examination of the witness, Whitaker, at the request of the District Attorney and outside the hearing of the jury, the Judge instructed Counsel for Defendant that he would not be allowed to cross-examine said witness concerning his habitual use of drugs, narcotics, and alcohol; but that any examination in this regard would be limited to the activities and conduct of the witness on the day and date of the alleged crime.
The assignments of error urged for reversal are:
1. The court erred in allowing the witness Whitaker to testify.
2. The verdict of the jury was against the great weight of the evidence.
3. It was reversible error for the trial court to allow the district attorney to examine and inform the jury on voir dire with reference to punishment.
4. It was reversible error for the deputy sheriff to testify for the State when he was driving the jury to meals during the course of the trial.
5. It was reversible error for the court to refuse to permit the defendant to cross-examine the witnesses Whitaker and Smith.
We are of the opinion the court did not err in permitting Whitaker to become a witness. Mississippi Code 1942 Annotated section 2315 (1956) provides in part that:
Every person who shall wilfully ... testify ... falsely to any material matter under any oath ... in any court of law ... shall be guilty of perjury, and shall not thereafter be received as a witness to be sworn in any matter or cause whatever... .
And Mississippi Code 1942 Annotated section 2479 (1956) provides:
Whenever it shall appear to any court that a witness or party who has been sworn ... in any case... pending before the court, has testified in such manner as to induce a reasonable presumption that he has wilfully ... testified falsely to some material point ... the court may immediately commit such . .. witness ... to prison, to take bond ... for his appearing and answering to an indictment for perjury.
The trial judge in conformity with the latter statute bound the witness over to await an indictment as a palpable perjurer.
The incompetency of a perjurer to become a witness is based upon a verdict of *690 guilty. The presumption of innocence extends to an accused in all criminal cases until disproved on a fair and impartial trial. Montgomery v. State, 85 Miss. 330, 27 So. 835 (1905). This presumption, of course, includes perjury.
The appellant contends, however, that McInnis v. State, 202 Miss. 715, 32 So.2d 444 (1947), supports his premise that Whitaker was guilty of perjury and was an incompetent witness. The basis of his contention is that the judge had personal and judicial knowledge of Whitaker's initial testimony since he presided in the former case and thus could have found the witness in contempt of court when it became apparent that he had sworn falsely on material facts in one case or the other. He therefore argues that since a contempt citation would have been in order, this is equivalent to a verdict of guilty, leaving Whitaker an incompetent witness. It is true that McInnis, supra, uses language indicating that false swearing may be adjudged a contempt of court. Nevertheless, the statutes afford an alternative method for punishment for perjury which is to bind the person believed to be guilty of such over to await the action of the grand jury. This statutory procedure was followed in this instance. We conclude that the presumption of innocence cloaks the accused until it is removed by a guilty verdict and at that time he becomes an incompetent witness and not before.
We do not reach the interesting question of what effect a subsequent verdict of guilty on the perjury charge would have upon the witness's prior testimony emanating from the same occurrence leading to appellant's conviction though we can visualize post-conviction proceedings. See Great Falls Mfg. Co. v. Mathes, 5 N.H. 574 (1830), and compare Hill v. State, 55 Tex.Cr. 435, 117 S.W. 134 (1909).
The alternative relief sought by way of continuance to afford a reasonable opportunity to prosecute Whitaker on the perjury charge is not well founded, in our opinion, since the matter of a continuance lies largely within the discretion of the trial court. Harrison v. State, 226 So.2d 765 (Miss. 1969). We think there exists a strong probability that a grand jury may fail to indict Whitaker, and especially so if there is brought to their attention the life sentence Whitaker has received for murder, with little likelihood of additional punishment by way of a perjury indictment and conviction.
Another circumstance arises which the trial court doubtless considered in passing upon the motion for a continuance and that is the probable hesitancy, not illogical, of a prosecuting attorney to press for an indictment and early trial on a perjury charge that would have the effect of rendering incompetent the chief witness of the state in a major crime if he were successful in the perjury endeavor. We conclude under the existing circumstances that the trial court did not abuse its discretion in denying the motion for a continuance.
The next assignment of error is that the verdict of the jury was against the overwhelming weight of the evidence. Resolving this issue poses a serious question indeed. Whitaker's testimony, undoubtedly essential to the conviction of Isonhood, is gravely suspect since he has confessed to lying under oath on material facts relating to the crime and is now awaiting indictment for palpable perjury. Being aware of the vagaries of jurors and the uncertainty of indictment and conviction of Whitaker which would directly affect the outcome of the case upon retrial, we decline comment upon the weight of the evidence since there exist other grounds which dictate a reversal of the cause. This being the circumstance and in view of the future possibilities (a guilty verdict, leaving the witness incompetent, an acquittal, leaving Whitaker's credibility unstained by a pending perjury charge, or no indictment by a grand jury, leaving the witness competent, but subject to a greater area of cross-examination than permitted *691 in this trial), we conclude that comment upon the weight of the evidence would serve no good purpose.
The appellant also urges that it was error for the district attorney to inform the jury on their voir dire examination with regard to the punishment which could be imposed for the crime of robbery. We note that the appellant moved for a mistrial after eleven jurors had been accepted for jury service. The motion was overruled, it being the court's opinion that since no evidence had been heard in the trial nor had the jury been instructed as to the law, that under these circumstances this error by the district attorney was harmless. With this conclusion of the trial court we agree, but caution that this practice, if it be such, is of doubtful validity in view of that which is stated in Ware v. State, 218 Miss. 173, 65 So.2d 236 (1953); Horn v. State, 216 Miss. 439, 62 So.2d 560 (1953); and Abney v. State, 123 Miss. 546, 86 So. 341 (1920). We conclude this assignment to be without merit, but express the hope that it will not reoccur on retrial since the distinction between harmless and prejudicial error is often delicate and difficult of decision.
The appellant next asserts that the court erred in permitting the deputy sheriff to testify in rebuttal for the State when it was known that he had driven the jury to meals during the course of the trial. He concedes, however, that no objection was interposed to this testimony at the time and therefore the court had no opportunity to rule upon the competency of this evidence. In several recent cases we have denounced the use of material witnesses serving as jury bailiffs. This practice probably has not influenced a jury verdict except on very rare occasion. However, it has the appearance and the possibility of undue familiarity with the jury, leading to just criticism of the jury system and should be avoided. See Dunn v. State, 264 So.2d 823 (Miss. 1972); Perkins v. State, 244 So.2d 414 (Miss. 1971); and Lee v. State, 226 Miss. 276, 83 So.2d 818 (1955). The error not being properly preserved for this appeal is without merit.
Appellant contends finally that the lower court erred in instructing counsel for the defendant, prior to the introduction of Whitaker as a witness, that he would not be permitted to cross-examine him concerning his habitual use of drugs, narcotics and alcohol other than on the day of the robbery. The only evidence linking the appellant to the crime is that he planned it approximately one week prior to its occurrence. The restriction placed upon the cross-examination precluded defense counsel from cross-examining the witness on his condition of sobriety and ability to recall the transactions on the day this appellant was alleged to have disclosed the robbery plan to him. The witness's testimony indicates that on the day of the robbery he had used alcohol and numerous drugs, including marijuana, amphetamines and LSD, and at that time could not remember where he was.
The record reflects that at the time Whitaker was arrested on the present charge he was incarcerated in the Hinds County Penal Farm for violation of the narcotics act. From these facts it appears to us that cross-examination relating to the witness's use of drugs or alcohol on the day he allegedly conferred with the appellant in the hospital with regard to the planning of the robbery was very material and that a mandate from the court that no cross-examination would be permitted upon this issue constitutes reversible error. In Walley v. State, 240 Miss. 136, 138, 126 So.2d 534, 535 (1961), we stated:
The State's evidence in support of the conviction is weak, and contains several unreasonable and inconsistent situations. However it is not necessary for us to analyze the evidence at length and decide whether it is sufficient to support the conviction. We think the case must be reversed for the exclusion of certain evidence proffered by defendant's counsel *692 in his cross-examination of Ellis, the State's chief witness. The defense has a right on cross-examination to interrogate the State's witnesses concerning their mental capacity, perception, memory and trustworthiness. These were especially important issues as to Ellis. On cross-examination of him, counsel asked Ellis whether he was confined in a mental hospital in San Antonio, Texas two years ago. The district attorney's objection to this question was sustained. It should have been overruled. Whether Ellis has a history of previous mental disorders was a relevant fact for the jury to consider in determining his veracity.
And in Bass v. State, 254 Miss. 723, 735, 182 So.2d 591, 595-596 (1966), we stated:
... On the subject of cross-examination, this Court said in Prewitt v. State, 156 Miss. 731, 735, 126 So. 824, 825 (1930):
"It is of the utmost importance in the administration of justice that the right of cross-examination be preserved unimpaired. It is the law's most useful weapon against fabrication and falsehood. As a test of the accuracy, truthfulness, and credibility of testimony, there is no other means as effective. In this state, cross-examination is allowed coextensive with the issues, Walton v. State, 87 Miss. 296, 303, 39 So. 689; not only, but it may proceed into the collateral circumstances surrounding, or in any way affecting, the transaction to the full extent that they have relevant connection by way of testing the memory, accuracy, sincerity, interest, or bias of the witness. In all these matters the privilege of counsel rightfully has broad latitude, and, to make it fully effective towards the purposes for which the law allows and favors it, the privilege should not be interfered with or hampered or restricted by the trial judge, except in clear case of irrelevancy, trespass beyond admissible ground, or extremes of continual, aimless repetition....
Liberal cross-examination on material matters, and we do not mean by this to say unlimited cross-examination, is the heart of our adversary system which is to seek the truth. It is the most useful weapon in our jurisprudence against fabrication and falsehood and should remain unimpaired.
The case is reversed and remanded for a new trial due to the unwarranted restriction of cross-examination upon material issues.
Reversed and remanded.
RODGERS, P.J., and INZER, ROBERTSON and SUGG, JJ., concur.