381 So.2d 983 (1980)
Larry JONES
v.
STATE of Mississippi.
No. 50944.
Supreme Court of Mississippi.
January 30, 1980.
Rehearing Denied April 2, 1980.
*987 Morris & Walton, Charles E. Morris, Jr., C. Wesley Walton, Biloxi, for appellant.
A.F. Summer, Atty. Gen. by Calvin Coolidge Williams, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PATTERSON, Chief Justice, for the Court on the Guilt-Determining Phase.
WALKER, Justice, for the Court on the Sentence-Determining Phase.
Larry Jones appeals from a second conviction of capital murder and sentence of death entered in the Circuit Court of the Second Judicial District of Harrison County.
We reversed Jones' first conviction and death sentence in Jones v. State, 342 So.2d 735 (Miss. 1977), and directed a new trial following Jackson v. State, 337 So.2d 1242 (Miss. 1976).

THE GUILT PHASE OF TRIAL
The state's case centers upon the testimony of J.D. Reddix, hereinafter J.D., who testified that on the morning of December 2, 1974, his brother Willie Reddix, hereinafter Willie, and Larry Jones persuaded him to drive them to downtown Biloxi. J.D. testified that at the time he had no knowledge of any criminal design of the others. After stopping for gas, J.D. proceeded with Willie and Larry Jones, hereinafter Jones, to downtown Biloxi where he parked his gray Cadillac in the parking lot of a shoe store. J.D. testified Willie and Jones then left walking in the general direction of Weinburger's store while he remained in the car. J.D. recalled that Jones at the time was wearing a pair of combat boots.
Orvel McGee was in the same downtown area on December 2, 1974. After identifying a photograph of J.D.'s car, he testified that at about 11:15 a.m. he saw one man park the car and two others get out of it and walk in the direction of Weinburger's store. McGee observed that one of the persons leaving the car wore combat boots. Shortly thereafter, he saw them return and noted the person wearing combat boots was carrying a footlocker. He could not identify Jones as one of the two men he saw leave and later return to the car.
Shortly before noon on December 2, 1974, Ray Real, a store manager, observed a man carrying a footlocker away from Weinburger's *988 store. At about this time Preston Sullivan testified he entered the store and found Arthur Weinburger, proprietor, lying in an office doorway amid a pool of blood. A surgeon gave evidence that Weinburger died later in the day as the result of blows to his head.
J.D. stated that Jones was carrying a footlocker when he returned to the car. A state witness, Lula Mae Bell, aunt of J.D. and Willie, at first testified she could not remember having seen her nephews or Jones in downtown Biloxi on the day of the homicide. However, on direct examination the following day she recanted, admitting that she had "lied" earlier in her testimony, and explained by stating her life had been threatened in the interest of Jones. She then testified that she did see Willie and Jones leave J.D.'s car and walk toward Weinburger's store on the day of the homicide and that Jones was wearing combat boots.
Annie Lee Reddix, mother of Willie and J.D., testified that on December 2, 1974, J.D., Willie and Jones left her house in J.D.'s car. When they returned, Jones stored the footlocker which he had in her house, changed the combat boots he was wearing to tennis shoes, and later departed, leaving the boots.
On December 3, 1974, pursuant to warrant, detectives searched the house of Annie Lee Reddix. They discovered a footlocker and a pair of combat boots. The footlocker was identified as the one taken from Weinburger's store, and the boots were found to be stained with human blood of an undeterminable type. Lerline Blancq, manager of Weinburger's store, testified that approximately $600 had been taken in the robbery and positively identified the merchandise found in the footlocker as belonging to Weinburger's store.
By his first, second, and sixth assignments of error, Jones raises the sufficiency of the evidence to support the jury's guilty verdict. He argues that only two witnesses, Lula Mae Bell, an admitted perjurer, and J.D. Reddix, an admitted accomplice, linked him to the crime.
We conclude the state presented circumstantial evidence sufficient to support the jury verdict of guilty. Under our authorities Lula Mae Bell's and J.D. Reddix's testimony is competent.
Lula Mae Bell was presumptively innocent of perjury when she testified and was therefore a competent witness. Isonhood v. State, 274 So.2d 685, 690 (Miss. 1973). As for J.D. Reddix, his status as an accomplice affected the weight, not the competency of his testimony. Thomas v. State, 340 So.2d 1 (Miss. 1976); Black v. State, 336 So.2d 1302 (Miss. 1976); Fleming v. State, 319 So.2d 223 (Miss. 1975). The jury had before it exhaustive attempts by the defense to impeach these witnesses and by the state to rehabilitate them. The trial court, in our opinion, properly left to the jury the weight and worth to be accorded their testimony. From the entirety of the record and particularly in view of the corroborating circumstances evidenced by disinterested witnesses, we think that reasonable minds could have found it to have been beyond reasonable doubt that Jones participated in the robbery resulting in Weinburger's death.
As a confessed accessory after the fact to the murder with which Jones was charged, J.D. was an accomplice. Dedeaux v. State, 125 Miss. 326, 87 So. 664 (1921). Therefore, his testimony must be considered with caution. Feranda v. State, 267 So.2d 305 (Miss. 1972). However, it is also established that an accused may be convicted on the uncorroborated testimony of an accomplice. Rich v. State, 322 So.2d 468 (Miss. 1975); Moore v. State, 291 So.2d 187 (Miss. 1974); Young v. State, 212 Miss. 460, 54 So.2d 671 (1951). Moreover, J.D.'s testimony appears consistent with the corroborating testimony to which other witnesses testified.
State witnesses Orvel McGee, Ray Real, Preston Sullivan, Lerline Blancq, and others, together established that at about midday on the day of the homicide, two empty-handed black men, one wearing combat boots, went in the direction of Weinburger's *989 store from J.D.'s parked automobile. Orvel McGee recalled seeing a man wearing combat boots return with a footlocker to the car a few minutes after he left it. Later a footlocker was carried by Jones into Annie Lee Reddix's house, where it was subsequently discovered and identified as stolen from Weinburger's store, and bloodstained boots were also found. In sum, the record contains more than "slight" corroborative evidence which we held sufficient to sustain the conviction on an accomplice's testimony in Lifer v. State, 189 Miss. 754, 199 So. 107 (1940), and cases cited therein.
On cross-examination of J.D., an inconsistency was established between his current testimony concerning the color of the pants worn by Jones on the day of the homicide and his testimony on the same matter given at a previous hearing. J.D. acknowledged the inconsistency, but offered no explanation. An additional inconsistency was brought out on cross-examination. J.D. had apparently told the Biloxi police that one "Royce" was with them on the day of the homicide, but the evidence was inconclusive as to whether "Royce" or "Roy,"[1] as he was later referred to, accompanied the participants in the crime to the downtown area.
We do not think the cross-examination concerning the color of the pants worn by Larry Jones and the company of Roy destroyed J.D.'s testimony as a matter of law. The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory and sincerity. The entire sequence of examination suggests that while Roy may have been "with them" sometime on December 2, 1974, he did not accompany the criminal participants to downtown Biloxi. Under the circumstances, we think leaving the question of credibility to the jury was proper and that appellant's conviction cannot be said to be contrary to the weight of the evidence. See Kinney v. State, 336 So.2d 493 (Miss. 1976); Black v. State, 336 So.2d 1302 (Miss. 1976); Fleming v. State, 319 So.2d 223 (Miss. 1975); Null v. State, 311 So.2d 654 (Miss. 1975).
Appellant next contends, "The record does not expressly show that this appellant was actively engaged in an assault on the victim in the course of the robbery set out by all the evidence in the record." We agree the record does not conclusively establish which of the two co-felons, Willie Reddix or Larry Jones, the appellant, actually wielded the blows causing Weinburger's death. However, doubt concerning the precise role of the appellant in the homicide does not upset the jury's verdict. The indictment alleges that Larry Jones, together with his co-indictees Willie Reddix and J.D. Reddix, participated in an armed robbery which resulted in the death of Arthur Weinburger, a human being. The statutory subsection proscribing appellant's conduct, Mississippi Code Annotated section 97-3-19(2)(e) (1972), appears in the indictment. It designates as capital murder a killing "done with or without any design to effect death, by any person engaged in the commission of the crime of ... robbery... ."
This language renders the factual question of which of two co-felons acted as the efficient cause of the death unnecessary to the verdict in the guilt-determining phase. It is enough that the evidence shows the willing participation of the accused in a robbery in furtherance of which a death resulted. See Price v. State, 362 So.2d 204 (Miss. 1978); McNeer v. State, 228 Miss. 308, 87 So.2d 568 (1956); Carrol v. State, 183 Miss. 1, 183 So. 703 (1938); Woodward v. State, 166 Miss. 596, 143 So. 859 (1932); Fisher v. State, 150 Miss. 206, 116 So. 746 (1928); cf. Miss. Code Ann. § 97-1-3 (1972).
As we have said, the evidence sufficiently demonstrates such a willing participation by the appellant. He does not challenge the indictment, nor suggest the legislature lacks the power to expose him to guilt of capital murder in the absence of proof that he had a specific intention to kill. We conclude that the verdict in the guilt-determining phase is within the law and the weight of the evidence.
*990 Appellant next contends the cumulative effect of trial errors consisting of unduly constrained voir dire examination, unduly restricted defense argument and improper prosecutorial remarks requires reversal.
The trial court has broad discretion in passing upon the extent and propriety of questions addressed to prospective jurors. Myers v. State, 268 So.2d 353 (Miss. 1972). Although broad, the discretion is not unlimited, and an abuse will be found on appeal where clear prejudice to the accused results from undue constraint on the defense or undue lack of constraint on the prosecution. See, e.g., McCaskill v. State, 227 So.2d 847 (Miss. 1969); Leverett v. State, 112 Miss. 394, 73 So. 273 (1916).
Appellant complains that the trial court did not permit him to inquire of the prospective jurors whether they would be happy to be tried by persons in their frame of mind. Yet our review reveals the trial court, for whatever reason, did permit this questioning. Further, appellant suggests he was not permitted to ask the prospective jurors whether they would follow the law. Again, the record does not support the suggestion, and we must conclude neither contention has merit.
Appellant next argues that undue restraint was imposed upon defense counsel when he attempted to ask the prospective jurors whether they would consider the indictment as anything but a "mere piece of paper" in considering their verdict. At this point the court advised defense counsel that he would instruct on this point and the record reveals that he did so at the appropriate time.
A review of the objections which were sustained to defense counsel's closing summation in the guilt-determining phase reveals no error, in our opinion. The court properly sustained an objection to defense counsel's attempt to place the individual jurors in the non-neutral position of the accused. See Danner v. Mid-State Paving Co., 252 Miss. 776, 173 So.2d 608 (1965).
The state also objected to defense counsel's statement, "[b]ear with me also because the state is going to try to confuse me as much as they can... ." The court sustained the objection to this argument and we think properly so. Later in defense counsel's argument, the court sustained an objection raised when counsel suggested to the jury that one of the state's witnesses had been granted immunity from perjury. Again, the trial court's ruling appears to have been correct, because there is no suggestion in the record that there had been a grant of immunity. One well established constraint upon the permissible perimeters of closing argument is that counsel must limit his remarks to the evidence presented. See Gray v. State, 351 So.2d 1342 (Miss. 1977); Nelms and Blum v. Fink, 159 Miss. 372, 131 So. 817 (1930).
Appellant next contends that the cumulative effect of objectionable statements made by the state vitiated his trial with prejudicial error. Appellant's complaint concerns testimony and statements which touched upon the unpleasant details of Weinburger's death. Again, reviewing the record, we find the trial court sustained defense counsel's objections to any detail relating to the physical aspects of the death when questioning exceeded that necessary to establish the fact and cause of death. For example, the trial court refused to admit pictures of the deceased during the guilt phase and instructed the jury to disregard the state's dim suggestions that the killing was particularly atrocious.
Appellant also complains that the jury learned of Willie Reddix's conviction in a separate trial. It is true that we have held admission of evidence of this nature to be inimical to a fair trial. Ivy v. State, 301 So.2d 292 (Miss. 1974); McCray v. State, 293 So.2d 807 (Miss. 1974); Buckley v. State, 223 So.2d 524 (Miss. 1969); State v. Thornhill, 251 Miss. 718, 171 So.2d 308 (1965). However, we find that defense counsel underscored Willie Reddix's conviction and attempted to use that fact to appellant's advantage, as can be seen from the following colloquy between defense counsel and state witness Annie Lee Reddix:

*991 Q. You do have a real good motive in shifting the blame in this case from your son J.D. to Larry Jones haven't you?
* * * * * *
A. I don't know the reason you are talking about.
Q. Well, J.D. is your son, isn't he?
A. Yes, he's my son.
Q. J.D. was charged with capital murder, wasn't he?
A. All three of them was charged with capital murder.
Q. That's right, and Willie's been convicted hasn't he?
A. Yes.
Q. And sent to the gas chamber.
A. Yes.
Also, defense counsel while cross-examining J.D. Reddix, elicited the following testimony:
Q. Were you or were you not a codefendant in this case in the beginning?
A. Would you  what 
Q.  Weren't you charged and indicted for the crime of capital murder?
A. Yes, I was.
We think an appellant cannot assail as prejudical his own trial tactics, because it would foster a propensity in litigants to create error to enhance the possibility of reversal and repeated trials. This he is not permitted to do. Simpson v. State, 366 So.2d 1085 (Miss. 1979).
Appellant then argues his motion for a mistrial was improperly denied, because irreparable prejudice resulted from the following:
BY MR. NECAISE: And then finding this Defendant along with the co-defendant, Willie Reddix, in Jackson County four days later and this Defendant doing 
BY MR. MORRIS:  objection, Your Honor. There is no evidence whatsoever before this Court that this Defendant was found with Willie Reddix.
BY THE COURT: Objection sustained.
The court's ruling sufficed to repair any prejudice which might otherwise have resulted. It negated, we think, any suggestion of guilt by association.
In conclusion, we are of the opinion that when considered either alone or in combination, appellant's third, fourth, and twelfth assignments of error do not merit reversal of the verdict rendered in the guilt-determining phase.
By his seventh assignment of error, Jones contends the court erred in refusing Instructions D-4, D-5, D-8, D-9, D-10, D-12, D-16, D-17, D-18 and D-19. We have studiously reviewed these instructions and are of the opinion they are in all essential respects cumulative with others which were granted. The trial court is not required to grant several instructions on the same question in a different verbiage. McMillan v. State, 198 Miss. 179, 21 So.2d 586 (1945). When we consider all of the instructions together, we conclude the jury was properly instructed upon the law of the case.
Instruction D-17 concerns the weight to be accorded the testimony of an accomplice. While it would not be improper to grant an instruction of this nature, Dedeaux v. State, 125 Miss. 326, 87 So. 664 (1921), the decision to grant or refuse it rests within the sound discretion of the trial court. Ragan v. State, 318 So.2d 879 (Miss. 1975); Wellborn v. State, 140 Miss. 640, 105 So. 769 (1925). Moreover, the instruction refers to "the unsupported testimony of an alleged codefendant." This suggests the testimony of the accomplice was unsupported by other evidence when in fact it was corroborated. We therefore think refusal of Instruction D-17 does not constitute reversible error.
Our review of the record reveals no prejudicial error. We therefore affirm the verdict of guilty.
AFFIRMED.
All Justices concur.

THE SENTENCING PHASE OF TRIAL
WALKER, Justice, for the Court.
The appellant contends there was error in dismissing jurors who were opposed *992 to the death penalty. The relevant portions of the voir dire examination lead us to conclude this assignment has no merit.
On appellant's appeal from his first conviction of capital murder, this Court in directing a retrial in accord with Jackson, supra, stated: "On retrial, if defendant is tried on a capital charge, the trial court will follow Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)." 342 So.2d at 737. The lower court complied with this directive by eliminating for cause those jurors who not only indicated they harbored conscientious scruples against the death penalty, but who also indicated those scruples would prevent them from trying the issue of guilt in accord with their oath. Those who harbored conscientious scruples but who signified they could follow the law and fairly try the case were retained as prospective jurors. This complied with Witherspoon, supra. See also Spinkellink v. Wainwright, 578 F.2d 582, 592-93 (5th Cir.1978).
Appellant next contends the death penalty statute, Mississippi Code Annotated section 99-19-101 (Supp. 1978), is unconstitutionally vague. He argues that no valid death penalty statute existed in this state at the time of the crime charged. We have rejected identical contentions in earlier opinions and think it unnecessary to reiterate the discussions contained in them. See Washington v. State, 361 So.2d 61 (Miss. 1978); Irving v. State, 361 So.2d 1360 (Miss. 1978); Bell v. State, 353 So.2d 1141 (Miss. 1977); and Jackson v. State, 337 So.2d 1242 (Miss. 1976).
Jones next argues there was error in Instruction C-30 concerning the form of the verdict. The alleged defect in the instruction consists of the omission of a statement informing the jurors in the event of their inability to reach a unanimous verdict a life sentence would be imposed. We note that Rule 5.13 of the Mississippi Uniform Criminal Rules of Circuit Court Practice provides for such a statement in the sentencing phase of a capital case; however, the omission has not been held reversible error. We have held only that "[i]f the jury is unable to agree unanimously on a verdict at the sentencing hearing, the defendant shall be sentenced to life in prison." Jackson v. State, 337 So.2d 1242, 1256 (Miss. 1976).
We do not find an instruction requested by appellant concerning the form of the verdict. But assuming, arguendo, that appellant preserved for review the issue raised by his eighth assignment of error, see McMullen v. State, 291 So.2d 537 (Miss. 1974), we are of the opinion that the omission does not constitute reversible error, because the jury did reach a unanimous verdict within a reasonable time.
This brings us to the argument that a life sentence should have been entered when the jury after deliberating for two hours and fifteen minutes, returned to the courtroom at 9:15 p.m. with a note, signed by the foreman, reading, "[w]e the jury cannot come to a unanimously [sic] decision  what shall we do?" The construction of this note becomes, as appellant suggests, crucial under Jackson, supra. If interpreted as a statement by the jurors that they could not within a reasonable time reach unanimity, the death sentence imposed the following day is in jeopardy. If, however, it is construed as a statement by the jurors that they were weary and desired a recess, the death sentence eventually imposed is valid, subject only to judicial review pursuant to Mississippi Code Annotated section 99-19-105 (Supp. 1978).
When the note was received the trial judge stated: "Ladies and gentlemen of the jury, it's been a long day. You started work this morning at about nine and it's getting a little bit late into the night so at this time, court is going to recess until nine tomorrow morning." In so stating, he complied with this Court's decisions concerning the procedure to be followed when the jury indicates its present inability to reach a unanimous verdict. See, e.g., Jordan v. State, 365 So.2d 1198, 1206 (Miss. 1978), and cases cited therein. We do not consider the note to be the equivalent of a verdict and therefore conclude this assignment lacks merit.
*993 Some of the Justices have expressed concern about remarks made by the prosecuting attorney during final arguments in the sentencing phase. These remarks were in response to statements, not supported by the record, made by the defendant while exercising his right to argue his case to the jury, and the district attorney's remarks alluded to the failure of the defendant to testify.
FOR CLARITY, SEE THE PARTS OF THE RECORD DEALING WITH THESE REMARKS ATTACHED HERETO AS APPENDIX "A."
We do not find any prejudicial error stemming from the prosecutor's remarks. The remarks were prompted by the defendant's own statements which were exculpatory and self-serving in nature, not under oath and not supported by the record.
Mississippi Constitution, Article 3, Section 26 (1890) guarantees the accused the right to argue his case to the jury. Gray v. State, 351 So.2d 1342 (Miss. 1977). In addition, the accused in a criminal trial has the right not to testify. That right is so basic to the American concept of a fair trial that a prosecutorial comment on an accused's failure to testify is a violation of the self-incrimination clause of the Fifth Amendment. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).
These two rights create a conflict which requires a defendant to make a choice. If he chooses to argue his case to the jury and at the same time invokes the Fifth Amendment, he must confine his remarks to the evidence in the record. The Fifth Amendment privilege against self-incrimination is a shield, not a sword. A criminal defendant who takes advantage of his right to argue his case to the jury must not be permitted to say all the things he might have testified to had he chosen to call himself as a witness. When he does so, he will be deemed to have waived the right not to have his failure to take the stand commented upon.
There is no doubt that an individual may waive the personal protections and privileges provided by the United States Constitution. Morgan v. United States Fidelity & Guaranty Co., 222 So.2d 820 (Miss. 1969). See also Brewer v. State, 233 So.2d 779 (Miss. 1970) [right of confrontation]; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1937) [Sixth Amendment]; Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946) [Fourth and Fifth Amendments].
This Court has specifically recognized that an accused can waive his immunity from self-incrimination, and that he does so when he takes the stand and testifies on the merits of the case. See Autry v. State, 230 Miss. 421, 92 So.2d 856 (1957). We are of the opinion that he does the same when he goes beyond the record when arguing his case and gives testimony on a material point which is not in the record.
The practical solution to the dilemma presented by the accused who uses his constitutional right to argue his case to the jury to give, what is for all practical purposes, testimony is to treat the unsworn testimonial statements of the accused which were not supported by the record as a partial waiver of the privilege against self-incrimination. It is not a total waiver of the privilege, since the prosecution is unable to cross-examine the accused at this late stage of the trial. But the prosecution may comment to the jury that the defendant's statements were not given under oath and that he was not subject to cross-examination about them. The constitutional privilege of the criminal defendant appearing pro se is adequately protected if the court gives him a clear and direct warning out of the presence of the jury prior to beginning his argument that such limited comment might follow if he goes outside the record and gives what amounts to unsworn testimony.
The Mississippi Constitution gives the accused the right to be heard by himself or counsel, or both. However, it does not exempt a defendant who argues pro se from following the rules of court procedure. We do note, however, that the trial court should allow him some leeway in *994 arguing his case, each case necessarily resting on its own facts and circumstances.
But, in those instances where a defendant, arguing pro se, clearly goes beyond the evidence in the record on a material point, as he did in this case, he must accept as a consequence the prosecution's comment on his failure to swear to the testimony. The defendant's remarks in this case cannot be dismissed as a failure to grasp "legal niceties." They are unsworn testimony, and as such, constitute a partial waiver of the constitutional privilege against self-incrimination and the prohibition against a district attorney from commenting on his not taking the stand.
We do not say that every defendant who argues pro se loses the privilege against prosecutorial comment on his failure to testify. Only when the defendant's remarks go beyond the evidence does he waive this privilege.
The appellant also contends the following statement by the district attorney in his closing argument constituted prejudicial error:
To come up behind an old man in the twilight years of life and hit him four times, as he told you, with a wrench. We finally found out what it was  with a wrench. That's what he told you when he got up here.
Even though an objection to this statement was sustained, the appellant contends that its effect was not erased from the minds of the jurors. Assuming this is true, we are not convinced the statement was prejudicial. The facts showed that the decedent was struck with a blunt instrument. We see no prejudice resulting from naming the instrument for what it was, be it a wrench or an iron pipe. The fact remains that decedent's death resulted from the blow. The jury was properly instructed to consider only the evidence in the record, and we cannot agree that any prejudice resulted since the objection to the statement was sustained.
Another problem which deserves comment arose in the sentencing phase. The lower court admitted evidence of an armed robbery conviction of the appellant entered after the December 2, 1974, murder of Weinburger. This conviction was affirmed on appeal in a per curiam opinion. Jones v. State, 340 So.2d 17 (Miss. 1976).
Among the aggravating circumstances available for consideration in capital cases under Mississippi Code Annotated section 99-19-101 (Supp. 1979), subsection (5)(b) is that: "The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person." (Emphasis added). In employing the word "previously," the statute designates no time frame. The question arises as to whether the legislature meant previous to the commission of the capital offense or previous to the trial for it.
We conclude the legislature intended to relate the word "previously" to the time of trial, so that a conviction between the time the capital offense was committed and the time of trial for it may be admitted into evidence as an aggravating circumstance. We think this, because a wide leeway is permitted the appellant to offer mitigating circumstances in avoidance of the death sentence, while an extremely limited type of behavior may be offered by the state in seeking capital punishment. In our opinion, the legislature undoubtedly intended a weighing of both at the time of sentencing so the past behavioral patterns likely to affect the defendant's future behavior might be evaluated by the jury in deciding whether the defendant will live or die. We think there is no more justification for terminating consideration of the defendant's criminal behavior at the time of the offense than there is for terminating consideration of favorable behavior at that time. All go to the question of whether the most severe punishment will serve a legitimate social purpose untainted by vindictiveness.
The aggravating circumstances introduced into evidence and appearing in the jury's verdict are:
(1) The offense was committed during the commission of robbery.

*995 (2) The offense was especially heinous, atrocious or cruel.
(3) Defendant has been previously convicted of a felony involving the use or threat of violence to the person.
The first was established by the first phase of trial which culminated in a guilty verdict. The second was proved by pictures illustrating the atrociousness of the killing, together with testimony showing the victim to have been old and weak in comparison with appellant. The third was established by the introduction of court records concerning the prior armed robbery conviction.
The defendant introduced no evidence of mitigating circumstances at the sentencing phase. However, there is evidence that the defendant's age was either seventeen or eighteen years at the time of the crime. Also, a mitigating circumstance mandated by Mississippi Code Annotated section 99-19-101(6)(d), relates to the role of the defendant in the crime. In this regard, there was no testimony indicating that this defendant was the one who struck the blows causing death even though blood was found on his boots. The jury was obviously aware of these circumstances and was instructed to consider any facts concerning the crime or the defendant's background which would reasonably mitigate against imposition of the death penalty. The jury nevertheless found unanimously from the evidence beyond a reasonable doubt that after weighing the mitigating circumstances and the aggravating circumstances, one against the other, the mitigating circumstances did not outweigh the aggravating circumstances, and the defendant should suffer the penalty of death.
Mississippi Code Annotated section 99-19-105 (Supp. 1979), in pertinent part, mandates the following:
* * * * * *
(2) The Mississippi Supreme Court shall consider the punishment as well as any errors enumerated by way of appeal.
(3) With regard to the sentence, the court shall determine:
(a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in section 99-19-101; and
(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
* * * * * *
(5) The court shall include in its decision a reference to those similar cases which it took into consideration. In addition to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:
(a) Affirm the sentence of death; or
(b) Set the sentence aside and remand the case for modification of the sentence to imprisonment for life.
(6) The sentence review shall be in addition to direct appeal, if taken, and the review and appeal shall be consolidated for consideration. The court shall render its decision on legal errors enumerated, the factual substantiation of the verdict, and the validity of the sentence.
In response to subsection (3)(a), the Court is of the opinion that the sentence of death was not imposed under the influence of passion or prejudice.
In response to subsection (3)(b), the Court is of the opinion that the evidence does support the jury's finding of the statutory aggravating circumstances as enumerated in section 99-19-101 and recited in the verdict.
In response to subsection (3)(c), the Court is of the opinion that the sentence of death is not excessive and disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
In complying with subsection (5), we have reviewed the following capital cases in which we have rendered dispositive decisions affirming death sentences and setting dates for executions: Culberson v. State, *996 Miss., 379 So.2d 499, No. 50,802, decided November 28, 1979, and not yet reported; Gray v. State, 375 So.2d 994 (Miss. 1979); Jordan v. State, 365 So.2d 1198 (Miss. 1979); Voyles v. State, 362 So.2d 1236 (Miss. 1978); Irving v. State, 361 So.2d 1360 (Miss. 1978); Washington v. State, 361 So.2d 63 (Miss. 1978); and Bell v. State, 360 So.2d 1206 (Miss. 1978).

SYNOPSES OF THE ABOVE CASES
Bell was an armed robbery case where the robbery had been successfully completed and the killing afterward was wanton, useless and utterly unnecessary. Although at trial Bell denied having actually fired the fatal shot, there was competent evidence that showed he was armed and present when the execution-style killing occurred. The jury found as an aggravating circumstance that Bell had committed the murder and the murder had occurred during the commission of armed robbery and kidnapping.
The following circumstances in mitigation were before the jury:
(1) On the night of the murder Bell had been taking marijuana and other drugs;
(2) Bell was either seventeen or eighteen years of age;
(3) According to Bell's testimony, he was an accomplice only and had asked another not to kill the victim at one time.
In Voyles, a thirty-year-old defendant killed his girl friend because she refused to put title to her car in his name. He beat her into unconsciousness, ran over her with a car, and threw her body into a creek. Relying essentially on the testimony of defendant's nephew, an eyewitness who claimed innocence, the jury found him guilty of capital murder and imposed a death sentence. Aggravating circumstances included the cruelty and atrocity of the killing, that the offense was committed for pecuniary gain, and that it was committed during the course of an attempt to commit robbery. There were no mitigating circumstances submitted to the jury.
In Culberson, the same three aggravating circumstances were present as are present in this case. A mitigating circumstance was that the death sentence rested solely on the testimony of the admitted accomplice, who had plea-bargained for a lesser sentence. In affirming the sentence of death, we implicitly held that the testimony of an admitted accomplice in a capital murder case sufficient to sustain a conviction in the guilt phase of the trial, is sufficient to sustain the death penalty in the sentencing phase.
The proof in this case sufficiently demonstrates that the defendant was an active and willing participant in a robbery in furtherance of which a death resulted. Although there was no direct testimony that Jones struck the fatal blow, the blood on his boots, coupled with the testimony of several witnesses who placed Jones near the scene of the crime, is strong evidence that he was at least present when the fatal beating took place. The doubt concerning Jones' precise role in the homicide does not upset the jury's sentence of death under these circumstances.
Compared to the other capital cases in which we have affirmed the death sentence, this killing was equally as wanton, cruel and senseless as the others. The defendant was actively engaged in a robbery during the course of which the victim, a merchant over seventy years of age, was brutally murdered by blows to the head which crushed his skull.
The present case was heard by the full Court, sitting en banc, and carefully reviewed in the manner set forth in Bell, supra, and that prescribed by Mississippi Code Annotated section 99-19-105(3) (Supp. 1978).
We find that: the sentence of death was not imposed in this case under the influence of passion, prejudice or any other arbitrary factor; that the evidence supports the jury's finding of statutory aggravating circumstances; and, having considered both the crime and the defendant, we find that the sentence of death in this case is not *997 excessive or disproportionate to similar cases in which such sentence has been imposed. The decision in the present case is consistent with conclusions reached in other cases before this Court in which the death penalty has been imposed.
Jones' conviction of capital murder and the sentence of death imposed upon him will be affirmed.
AFFIRMED AND WEDNESDAY, MARCH 12, 1980 IS SET AS THE DATE OF EXECUTION OF THE DEATH SENTENCE.
All Justices concur in the Guilt-Determining Phase.
ROBERTSON, P.J., and WALKER, SUGG, LEE and BOWLING, JJ., concur in the Sentence-Determining Phase.
PATTERSON, C.J., SMITH, P.J., and BROOM and COFER, JJ., dissent.

APPENDIX "A"

LARRY JONES' PRO SE ARGUMENT TO JURY DURING SENTENCING PHASE OF THE BIFURCATED TRIAL

* * * * * *
THE JURY WAS THEREUPON RETURNED TO THE COURTROOM AND THE COURT HAVING FIRST INSTRUCTED THE JURY, MR. THOMAS PRESENTED OPENING ARGUMENT TO THE JURY ON BEHALF OF THE STATE OF MISSISSIPPI, AT THE CONCLUSION OF WHICH, THE DEFENDANT PROCEEDED WITH FINAL ARGUMENT TO THE JURY, DURING THE COURSE OF WHICH THE FOLLOWING OBJECTION WAS MADE:
THE DEFENDANT: Ladies and gentlemen, my name is Larry Jones and since I see that y'all is confused about what happened and you know, none of y'all know the real facts, which I don't either, and there was more than three peoples involved  there was four involved in the 
BY MR. NECAISE:  if the Court please, now, we object to that.
BY THE COURT: On what grounds, counsel?
BY MR. NECAISE: On the grounds that he is testifying, if the Court please, and there's no way we can cross examine him on that. He's saying there were four people involved. There's no testimony to that, Judge, and no way we can cross examine him on that. Now, he can make a plea to the jury but not something that is not in the record.
BY THE COURT: Well, as to that limited statement, I am going to overrule the objection.

* * * * * *
THE DEFENDANT CONTINUED WITH FINAL ARGUMENT TO THE JURY WHEN ANOTHER OBJECTION WAS MADE BY MR. NECAISE:
THE DEFENDANT: We got uptown. He knowed about it. I'm the only one didn't have no idea of what was happening because they had planned way before I ever thought  you know, they planned it when they got short of money 
BY MR. NECAISE:  if the Court please, we are going to object to this.
BY THE COURT: On what grounds?
BY MR. NECAISE: On the same grounds  this is not testimony  this is not in the record.
BY THE COURT: Well, that's what he's arguing, counsel. He's entitled to make argument and draw inferences from the testimony in the record and I 
BY MR. NECAISE:  Judge, it's not in the record.
BY THE COURT:  don't know that he's exceeded that yet.

* * * * * *
THE DEFENDANT PROCEEDED WITH FINAL ARGUMENT TO THE JURY AND ANOTHER OBJECTION WAS MADE BY MR. NECAISE:
THE DEFENDANT: Just as I was coming back, I seen Roy coming out with this suitcase and Willie running the opposite way  I *998 don't know which way it was  I think it was back this way, which is 
BY MR. NECAISE:  if the Court please, now, that is testifying as to what he saw coming out. That's not drawing any inference. That's testifying and there's no way to contradict that and it's not fair, Judge, if he doesn't take the stand and let the State cross examine him on this but to stand up here and to be able to do something that the State does not have a right to cross examine him on is not proper and that is certainly outside of the record, Judge. There's nothing in the record that Roy was the one that came outside and that Roy was the one that had on the boots. There's no testimony to that. It's uncontradicted until he got up here to make what he's calling a final argument and what he's doing is testifying. The State didn't have a right to call him, Judge. We couldn't put him on the stand.
BY THE COURT: The same rule applies, counsel, to the Defendant at this time as far as the statement he makes here is not testimony and is not evidence. It's merely argument and the jury should consider only the evidence in the course of their deliberation.
BY MR. THOMAS: Judge, we are restricted to arguing based upon the evidence. He's putting testimony or trying to put it in a backdoor approach before a jury.
BY MR. MORRIS: Your Honor, I am going to take issue to that statement and ask that the jury disregard that remark.
BY THE COURT: Sustained, at least to the last remark about a backdoor approach.

* * * * * *
THE DEFENDANT CONTINUED WITH FINAL ARGUMENT TO THE JURY WHEN ANOTHER OBJECTION WAS MADE:
THE DEFENDANT: During that time, when all this was happening, I was around eighteen and I didn't know where or what they 
BY MR. NECAISE:  if the Court please, now, there is no testimony to that. Now, this is  now, Judge, there is no testimony to that.
BY MR. MORRIS: There is testimony to his age, Your Honor.
BY MR. NECAISE: Judge, there is no 
BY MR. MORRIS:  from J.D. Reddix. I challenge the record on that.
BY THE COURT: What did Reddix testify?
BY MR. MORRIS: J.D. Reddix testified that he was twenty at the time of the crime and he is now twenty-three and that the Catfish  his words exactly: Catfish was eighteen years old.
BY THE COURT: Objection overruled.

* * * * * *
FINAL ARGUMENT WAS CONCLUDED BY THE DEFENDANT IN HIS OWN BEHALF AND MR. MORRIS PROCEEDED WITH FINAL ARGUMENT TO THE JURY ON BEHALF OF THE DEFENDANT.
PATTERSON, Chief Justice, dissenting:
I concur with the majority in the procedure established for pro se arguments on the sentencing phase of a capital case, but would apply it prospectively as was done in Jackson v. State, 337 So.2d 1242 (Miss. 1976).[1]
I dissent from the imposition of the death sentence, because the appellant was only seventeen years of age at the time of the homicide and appears to have a borderline mental capacity. While it is true that neither his age or mental capacity was formally introduced into evidence on the sentencing phase, I nevertheless think we are compelled to consider these items on review because such were included with the report prepared by the trial judge as commanded by Mississippi Code Annotated section 99-19-105 (Supp. 1979), and both age and mental *999 capacity are specified in section 99-19-101(6) concerning mitigating circumstances.
I have no desire to quibble regarding the precise reaction of the jury to the prosecutor's statement, "To come up behind an old man in the twilight years of life and hit him four times, as he told you, with a wrench. We finally found out what it was  with a wrench. That's what he told you when he got up here." I think it had the likelihood of leading the jury into the belief that the appellant struck the blows when there is no evidence in this record establishing that fact. Section 99-19-105(2)(a) mandates our consideration of punishment. Subsection (3) directs our attention to determining "[w]hether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor." I cannot state categorically whether the quoted words did or did not prejudice the jury, but I do think they had that propensity.
I would remand for another jury to determine the punishment, giving consideration to the defendant's age and mental capacity. This would also afford the opportunity for both the appellant and the state to give application to the new rules concerning pro se argument if this prerogative is again indulged by the appellant.
SMITH, P.J., and BROOM and COFER, JJ., join in this dissent.
NOTES
[1] Again referred to in the sentencing phase by Jones in his pro se argument.
[1] We have discussed the practicality of remanding this case to the trial court for the purpose of determining sentence only, but we are of the opinion that justice demands that the persons convicted and sentenced to death prior to our holding today should have the benefit of all the guidelines outlined herein. (337 So.2d at 1257)