746 So.2d 901 (1998)
Eric Dana BRUCE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00082 COA.
Court of Appeals of Mississippi.
December 30, 1998.
Rehearing Denied April 20, 1999.
Certiorari Denied August 5, 1999.
*903 Anthony J. Buckley, Laurel (Withdrawn), Tyree Irving, Attorneys for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
Before THOMAS, P.J., and DIAZ, HERRING, and KING, JJ.
KING, J., for the Court:
¶ 1. Eric Dana Bruce was convicted of murder in the Jones County Circuit Court and sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Bruce has appealed and assigned six points of error:
(1) WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT TO SUPPORT BRUCE'S CONVICTION FOR MURDER.
(2)WHETHER THE GRANTING OF INSTRUCTION S-2A WAS TANTAMOUNT TO AN IMPERMISSIBLE *904 AMENDMENT OF THE INDICTMENT.
(3)WHETHER AN EVIDENTIARY PREDICATE WAS ESTABLISHED FOR THE GRANTING OF A MANSLAUGHTER INSTRUCTION, AND IF SO, WAS INSTRUCTION S-2A PROPER.
(4)WHETHER THE JURY VERDICT IS CONTRARY TO LAW, CONTRADICTED BY PHYSICAL EVIDENCE AND AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE OF THE LAW.
(5)WHETHER THE COURT ERRED PREJUDICIALLY IN ADMITTING INTO EVIDENCE A SKS RIFLE, METAL BULLET JACKET AND PICTURES OF THE SUSPECTED SHOOTING SCENE.
(6)WHETHER THE APPELLANT RECEIVED A FAIR TRIAL IN LIGHT OF PROSECUTORIAL MISCONDUCT, IMPROPER ADMONITIONS BY THE COURT TO DEFENSE COUNSEL AND FAILURES OF DEFENSE COUNSEL.
Finding no error, this Court affirms the circuit court judgment.

FACTS
¶ 2. On February 18, 1996, Bruce attended a party at Shady Oaks High School in Jones County, Mississippi. While at the party, Bruce argued with Darryl Jones about Veronica, who was Bruce's cousin. Veronica had accused Darryl of making an insulting gesture toward her.
¶ 3. Bruce left the party with a second cousin, Horace Jones, and Preston Knight, in a red truck. They retrieved a SKS rifle from Bruce's house. With Preston driving, the trio returned to the party and searched for Darryl. Unable to find Darryl, they returned to the truck. Later, they noticed Darryl riding in Daniel Turner's car.
¶ 4. They followed Daniel's car toward the town of Soso, but turned onto another road. After seeing the car later on Highway 28, they again followed it. Preston pulled the truck to the left lane of the highway. Bruce then leaned out of the window and fired his rifle toward Daniel's car. Afterwards, Preston drove the truck to Horace's house. The boys were later informed that Matthew Jones, who had been riding in Daniel's car, died from a gunshot wound to the back.
¶ 5. The day after the shooting, Mel Riley, an investigator with the Jones County Sheriff's Department, examined the shooting scene on Highway 28. Because of the chipped and scarred condition of the highway, no search was conducted to determine whether bullet fragments were present.
¶ 6. Investigator Riley also examined Daniel's car. He stated that a hole was present on the left side of the car trunk indicating that a bullet had entered at this point. Another possible bullet hole was found on the car roof above the left passenger side, rear window.
¶ 7. Jones County deputies later found two weapons, a SKS rifle and a nine millimeter pistol, in Daniel's car. A metal bullet jacket was found underneath the mat of the trunk. The pistol was returned to Daniel, but the rifle and bullet jacket were sent to the Mississippi Crime Laboratory for analysis.
¶ 8. On February 21, 1996, Investigator Riley participated in the retrieval of a .30 caliber, SKS rifle. He testified that Johnny Smith, a member of the Civil Defense Dive Team, recovered this rifle from the Lucy Hole[1] near Soso, Mississippi. Mr. Smith gave the weapon to Investigator Riley, who took it to the Mississippi Crime Laboratory for analysis. Because the rifle had been submerged in water, no fingerprints could be lifted.
¶ 9. Dr. Steven Hayne, a forensic pathologist, performed an autopsy on Matthew. *905 He found an extremely large, entrance gunshot wound located over Matthew's back, and sixteen inches below the top of his head. Secondary missile fragments surrounded the gunshot. It was Dr. Hayne's opinion that "the entrance wound was consistent with having been produced by a large caliber, high velocity weapon and ... the projectile had gone through an intermediate target prior to striking the deceased in the back." He stated that Matthew Jones "died of a gunshot wound to the back consistent with a re-entry distant and penetrating gunshot wound." The bullet went through an intermediate target and traveled some distance before it struck Mr. Jones, and the bullet did not exit the body. It was Dr. Haynes's opinion that Matthew's injury was consistent with someone having fired a gunshot from another vehicle and the bullet having traveled through the trunk and backseat of the vehicle.
¶ 10. Dr. Hayne removed the lead core of the bullet from Matthew's body. He gave it to Ann Hayne, his office assistant. Ms. Hayne sent it to the Mississippi Crime Laboratory for analysis.
¶ 11. Steve Byrd, a forensic scientist with the Mississippi Crime Laboratory, conducted analysis on the lead core of the bullet, the bullet jacket, and the SKS rifle retrieved from the Lucy Hole. He examined the lead core and the bullet jacket visually and microscopically. The rifle was examined visually and then test fired to retrieve test standards. After comparing the lead core and bullet jacket with the test standards, Mr. Byrd determined that (1) neither projectile could positively be identified as having been fired from the SKS rifle and (2) the hole located on the left side of the car's truck was consistent with that fired by a .30 caliber weapon.
¶ 12. Mr. Byrd also test fired the second SKS rifle into the right side of the trunk. It was Mr. Byrd's opinion that this test hole was also consistent with that fired by a .30 caliber weapon.
¶ 13. Bruce and Horace were subsequently indicted for their participation in the shooting. Preston was not charged. Horace was charged as an accessory to murder. However, the Jones County District Attorney's Office granted him leniency in exchange for his testimony against Bruce.
¶ 14. Bruce went to trial, and the jury convicted him of murder. He was sentenced to serve a term of life imprisonment. Bruce's motions for directed verdict and new trial having been denied, he now appeals his conviction and sentence.

I. THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT BRUCE'S CONVICTION FOR MURDER.
¶ 15. In his first assignment of error, Bruce contends that the State failed to present evidence to support a finding that Bruce specifically intended to kill Matthew. Bruce argues that because the State presented no evidence to establish his specific intent to kill, his Motion for Directed Verdict should have been granted.

Standard of Review
¶ 16. The standard of review for appeals from an overruled motion for directed verdict is as follows:
"[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State." McClain v. State, 625 So.2d 774, 778 (Miss.1993). "We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Id.

Law and Analysis
¶ 17. Bruce argues that because he did not (1) know Matthew or the people in Matthew's car nor (2) have an altercation or confrontation with Matthew prior to the *906 shooting, he could not have possessed a specific intent to kill. He points to the testimony of both Horace and Preston to support his contention that he was merely trying to scare the individuals in Matthew's car rather than intentionally kill a specific person. Bruce's argument is without merit.
¶ 18. Bruce was charged with murder as defined under Miss.Code Ann. § 97-3-19(1) (Rev.1994). The indictment does not specify under which subsection Bruce was charged. However, both Bruce and the State concede that subsection (a) was the applicable section.
¶ 19. Miss.Code Ann. § 97-3-19(1)(a) prescribes that the killing of a human being by any means or in any manner shall be murder when done with deliberate design to effect the death of the person killed, or of any human being. "`[D]eliberate' always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. `Design' means to calculate, plan, [or] contemplate." Jones v. State, 710 So.2d 870, 877 (Miss.1998) (quoting Windham v. State, 520 So.2d 123, 127 (Miss.1987)).
¶ 20. In the instant case, the State presented the following evidence to establish that Bruce had full awareness of his actions and possessed a deliberate design to effect Matthew's death:
(1) Horace and Preston testified that after an altercation with Darryl and Daniel, Bruce left the school and retrieved a rifle from Bruce's house. Thinking that he saw Darryl in Daniel's car, Bruce indicated to Preston that he wanted to follow the car.
(2) Horace, Preston, Daniel, Tiger Jean Carter, and Jamie Jones testified that Bruce, while riding near Daniel's car, aimed a deadly weapon toward the car and discharged it.
¶ 21. Though Bruce argues that he discharged his weapon not intending to kill Matthew, he is presumed to have intended the natural and probable consequences of his voluntary and deliberate acts. 22 C.J.S. Criminal Law § 35 (1990). When intentionally firing his rifle toward a moving automobile occupied by several persons, Bruce was presumed to have intended the likely consequence of killing Matthew, an unknown person. Based upon the evidence, the trial court did not err in failing to grant a directed verdict.
II. THE GRANTING OF INSTRUCTION S-2A WAS TANTAMOUNT TO AN IMPERMISSIBLE AMENDMENT OF THE INDICTMENT.
III. AN EVIDENTIARY PREDICATE WAS NOT ESTABLISHED FOR THE GRANTING OF A MANSLAUGHTER INSTRUCTION.
¶ 22. In his second and third assignments of error, Bruce contends that the trial court erred by granting the State's Instruction S-2A, a manslaughter instruction. He argues that (1) this instruction states the definition for murder under Miss.Code Ann. § 97-3-19(1)(b) rather than manslaughter and (2) the facts did not support the giving of a manslaughter instruction.
¶ 23. Where the evidence supports a murder conviction, and the jury finds the defendant guilty of murder, the defendant cannot complain that a manslaughter instruction was given. Fowler v. State, 566 So.2d 1194, 1201 (Miss.1990). Accordingly, this Court finds no merit in this issue.

IV. THE JURY VERDICT IS CONTRARY TO LAW, CONTRADICTED BY THE PHYSICAL EVIDENCE AND AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE.
¶ 24. In his fourth assignment of error, Bruce contends that the jury verdict is against the overwhelming weight of the credible evidence and that certain physical evidence in the case at bar contradicts the jury verdict. This Court disagrees. "In determining whether or not a jury verdict is against the overwhelming weight of the *907 evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial." Isaac v. State, 645 So.2d 903, 907 (Miss.1994).
¶ 25. Bruce suggests that the following evidence contradicts the jury verdict:
(a) All diagrams drawn by the witnesses show that a shot fired from the truck must have been fired at an angle; therefore, the projectile could not have entered the truck in the manner that it did.
(b) The projectile must have been traveling at a left to right angle. Matthew Jones was killed from a projectile which traveled right to left at approximately 20 degrees and
upward or downward, plus or minus 10 degrees.
(c) The headlights of the truck were apparently turned off, thus making it very dark where the shots were fired.
Bruce argues that diagrams[2] drawn by Horace, Preston, Jamie, Daniel, and Sonya McLaurin[3] show that a bullet could not have entered the left side of the trunk of Daniel's car and made the trajectory that killed Matthew.
¶ 26. The diagrams of Horace and Preston indicated that they saw sparks on the right, rear side of the car. However, the diagrams of the remaining witnesses indicated that the truck traveled in the lane to the left of Daniel's car. This Court notes that none of the diagrams were drawn to scale; therefore, the possibility that a bullet could have hit an intermediary target and then hit the left side of the car was not precluded. It was within the jury's province to weigh this evidence, and accordingly, this Court defers to the jury's decision to render a guilty verdict. McClain, 625 So.2d at 778.
¶ 27. Bruce contends that on another drawing made by Daniel he incorrectly indicated where a person named Shawn was sitting on the backseat. He argues that this drawing was inconsistent with Daniel's previous testimony which indicated that Josiah Hicks sat in the middle on the backseat.
¶ 28. Inconsistencies are for the jury to evaluate. Jones v. State, 381 So.2d 983, 989 (Miss.1980). "The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine what portions of the testimony of any witness it will accept or reject..." Henson v. Roberts, 679 So.2d 1041, 1045 (Miss.1996). This Court will not disturb the jury's findings unless the verdict is so contrary to the overwhelming weight of the evidence that "to allow it to stand would sanction an unconscionable injustice." Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983).
¶ 29. Bruce contends that any shot fired from the truck in the left lane would have been traveling at a left to right angle. Because Matthew was killed by a bullet which entered his body and coursed from right to left, Bruce argues that no bullet from his gun could have killed Matthew.
¶ 30. Bruce's argument centers again on a factual issue for determination by the jury. It was the duty of the jury to evaluate this evidence to determine whether a bullet from Bruce's weapon caused Matthew's death. McClain, 625 So.2d at 778.
¶ 31. Bruce finally argues that the lights were turned off at the time of the shooting, implying that the testimony of the State's witnesses was inaccurate. "The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, *908 memory and sincerity." Jones, 381 So.2d at 989. Bruce's argument is without merit.

V. THE COURT ERRED PREJUDICIALLY IN ADMITTING INTO EVIDENCE A SKS RIFLE, METAL BULLET JACKET AND PICTURES OF THE SUSPECTED SHOOTING SCENE.
¶ 32. In his fifth assignment of error, Bruce contends that the trial court erred in admitting the SKS rifle recovered from the Lucy Hole, the bullet jacket, and the photographs of the suspected shooting scene. A review of the record demonstrates that Bruce failed to object to admission of the rifle and photographs. He objected to admission of the bullet jacket, but the objection was untimely.
¶ 33. This Court is under no obligation to consider assignments of error when either an objection was not made or was untimely. Carr v. State, 655 So.2d 824, 832 (Miss.1995). However, Bruce later raises a claim of ineffective assistance of counsel due to Attorney Buckley's failure to object to the admission of the rifle and photographs. In light of his right to effective assistance of counsel, this Court will address these issues in his final assignment of error.

VI. THE APPELLANT DID NOT RECEIVE A FAIR TRIAL IN LIGHT OF PROSECUTORIAL MISCONDUCT, IMPROPER ADMONITIONS BY THE COURT TO DEFENSE COUNSEL AND FAILURES OF DEFENSE COUNSEL.
¶ 34. In his final assignment of error, Bruce contends that the prosecutor, the trial court judge and his attorney, Anthony Buckley, committed several errors. This Court addresses each person's alleged error below.

A.

Prosecutorial Misconduct
¶ 35. Bruce contends that the prosecutor made prejudicial and improper statements during closing argument. The statements read as follows:
(1) We will never know how far Eric Bruce was hanging out the window ... and somebody is hanging out of the window with some kind of weapon, shooting at another vehicle .... But there is one thing that is undisputed here, that is, that Eric Bruce was on that road that night with this SKS rifle. He was on the passenger sidethat's undisputedof the red truck. He hung out of the window. He could have hung low, he could have hung far, somebody could have been holding his feet, he could have been sitting on his knees.
(2) I think he intended to come back and do bodily harm.
¶ 36. A review of the record reveals that Bruce failed to object to these alleged improper remarks. Procedurally, "[c]ontemporaneous objections to allegedly erroneous comments of the prosecuting attorney in closing arguments must be made or the point is waived." Gray v. State, 487 So.2d 1304, 1312 (Miss.1986). This Court is, therefore, not required to address this issue. However, Bruce raises the same assignment of error under his argument regarding ineffective assistance of counsel. In the interest of Bruce's right to a fair trial, this Court will address this issue.
¶ 37. Bruce argues that the prosecutor's remarks were beyond the evidence presented. No testimony established that anyone held Bruce's feet while he hung out the window or that Bruce was sitting on his knees. He also argues that the prosecutor improperly expressed his personal belief in Bruce's guilt.
¶ 38. Though the prosecutor's statements appear to have been inappropriate, under all the facts and circumstances, this Court does not find that these statements were so prejudicial as to constitute reversible error. Prosecutors are admonished in the future to conform opening *909 and closing statements to the evidence presented during trial.
¶ 39. Bruce contends that the prosecutor failed to reveal the deal made by the State with Horace in exchange for his testimony against him. A review of the record reveals that the prosecutor stated both, during trial and at the hearing for a new trial, information regarding any deal made with Horace. The jury was made aware of the fact that Horace was given leniency for his testimony. It does not appear that the prosecutor withheld information from the defense.

B.

Trial Court Judge Misconduct
¶ 40. Bruce argues that statements made by the Court in the presence of the jury were inappropriate and diminished the jury's esteem for his counsel. The following statements were made during trial:
(1) "If y'all argue with each other and argue with me one more time, you are going to find out what the burden of proof is keeping you out of jail. Now do you understand what I am saying?"
(2) Court: "That's what you get for not objecting when somebody is leading." Bruce's Attorney: "Well I'm just objecting to the leading on that one. I'm objecting now.
Court: "Well that's why you are supposed to stand up and object."
¶ 41. A trial judge is charged with maintaining order and promoting judicial economy in the courtroom. Barlow v. State, 272 So.2d 639, 640 (Miss.1973). The previous statements, though somewhat sarcastic, appear to have been made in an attempt to maintain order and ensure compliance with the rules of evidence.

C.

Attorney Buckley's Effective Assistance of Counsel
¶ 42. Bruce argues that he was denied his right to effective assistance of counsel. This Court disagrees. When judging an attorney's performance, the proper standard is that of reasonably effective assistance. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the following two-prong test for determining effective assistance of counsel:
(1) Was counsel's performance deficient?
(2) Did the deficient performance prejudice the defense so as to deprive the defendant of a fair trial?
See also Wilcher v. State, 479 So.2d 710, 712 (Miss.1985); Stringer v. State, 454 So.2d 468, 477 (Miss.1984).
¶ 43. Applying the first prong of the test, this Court considers whether Anthony Buckley gave a deficient performance. In doing so, this Court presumes that Attorney Buckley's conduct falls within the wide range of effective assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, Bruce must identify specific deficiencies in the record which indicate a failure of counsel to render effective assistance. Id.
¶ 44. In his attempts to overcome this presumption, Bruce specifically contends that Attorney Buckley:
(a) did not request a continuance of the trial when he learned that Willie D. Shelby had not been served.
(b) did not call Omekia Brown, Vanessa Jones, and Sylea Crosby to testify even though they were available and had information helpful to the appellant.
(c) used poor judgment in making an issue about the .9 mm not being tested by the State when he had apparently told the investigator he did not want it tested.
(d) did not object to the rifle, recovered from the Lucy Hole, and the pictures of the suspected shooting scene, being admitted into evidence.

*910 (e) did not present to the jury an instruction on appellant's theory of the case.
(f) did not object to the improper portion of the State's closing argument.
¶ 45. This Court will address the alleged deficiencies individually.
(a) Attorney Buckley did not request a continuance of the trial when he learned that Willie Shelby had not been served.
¶ 46. Bruce contends that Attorney Buckley should have moved for a continuance upon learning that Willie Shelby, a passenger in Daniel's car, had not been subpoenaed to court. The following evidence was included in Willie's statement:
(1) Willie saw Bruce, Horace, and Preston leave in a red truck.
(2) Bruce held a SKS rifle while riding in the red truck.
(3) Bruce sat next to the passenger window in the truck.
(4) The three boys followed Daniel's car.
(5) Willie heard one shot.
¶ 47. After a review of Willie's statement to the Jones County Sheriff's Department, this Court does not find that a continuance was warranted. Bruce argues that Willie's statement reveals more details regarding the events surrounding the shooting. However, this Court finds this statement to have been cumulative to the testimony of several State witnesses. Mississippi Rule of Evidence 403 prohibits the needless presentation of cumulative evidence.
(b) Attorney Buckley did not call Omekia Brown, Vanessa Jones, and Sylea Crosby to testify even though they were available and had information helpful to the appellant.
¶ 48. Bruce contends that Attorney Buckley failed to call three witnesses who were available and had helpful information. Like Willie's testimony, the testimony of Vanessa Jones, Omekia Brown and Sylea Crosby, all passengers in Sonya's car, was cumulative to the testimony of several witnesses. M.R.E. 403. Each witness gave a statement which indicated that (1) they heard Bruce and Darryl argue, (2) Darryl's truck passed Sonya's car and (3) they heard one shot. This Court does not find that Attorney Buckley improperly failed to subpoena these witnesses.
(c) Attorney Buckley used poor judgment in making an issue about the .9 mm not being tested by the State when he had apparently told the investigator he did not want it tested.
¶ 49. Bruce argues that Attorney Buckley improperly made an issue regarding the nine millimeter pistol found in Daniel's car.
¶ 50. Prior to trial, Attorney Buckley stated to Investigator Riley that he did not want the pistol tested. However, during trial, he asked a series of questions regarding whether the pistol was actually tested.
¶ 51. Because it had been determined that Daniel's death resulted from a high caliber weapon, Attorney Buckley's inquiry about the nine millimeter was ill advised. He exercised poor judgment; however, his inquiry was not so prejudicial as to alter the verdict.
(d) Attorney Buckley did not object to the rifle, recovered from the Lucy Hole, and the pictures of the suspected shooting scene, being admitted into evidence.
¶ 52. Bruce argues that Attorney Buckley should have objected to admission of the SKS rifle retrieved from the Lucy Hole and the State's photographs of Highway 28. This Court does not find that objections were in order.
¶ 53. The SKS rifle was relevant evidence and as such, was admissible. M.R.E. 402. Many of the State's witnesses testified that they saw Bruce with a SKS rifle while riding in Preston's truck. The SKS rifle corroborated the testimony of the State's witnesses and had relevance to the crime itself. No identifying marks were found on this rifle. However, it was *911 the jury's duty to evaluate whether this SKS rifle was the actual one used by Bruce during the shooting. Attorney Buckley did not err in failing to object to the admission of the SKS rifle.
¶ 54. Further, the admission of physical evidence is governed under rules regarding chain of custody. "The chain of custody of evidence in control of the authorities is usually determined within the sound discretion of the trial judge, and unless this judicial discretion has been so abused as to be prejudicial to the defendant, this Court will not reverse the rulings of the trial court." Nixon v. State, 336 So.2d 742, 744 (Miss.1976).
¶ 55. Investigator Riley testified that he was given the rifle by a member of the civil defense dive team. Upon receiving the rifle, Investigator Riley personally delivered it to the Mississippi Crime Laboratory. The State properly established the chain of custody during trial. An objection in this regard would have been futile.
¶ 56. The photographs of Highway 28 were also relevant evidence. Several state witnesses testified that the shooting took place while driving on Highway 28 near Soso.
¶ 57. Though Investigator Riley does not state who took the photographs, he suggests that police department personnel were responsible. Bruce's argument is without merit.
(e) Attorney Buckley did not present to the jury an instruction on appellant's theory of the case.
¶ 58. Bruce contends that Attorney Buckley did not offer an instruction on his theory of the case. However, he fails to define his theory of the case or offer argument or authority in this regard. This Court is, therefore, not required to address this issue. Brown v. State, 534 So.2d 1019, 1023 (Miss.1988).
(f) Attorney Buckley did not object to the improper portion of the State's closing argument.
¶ 59. Bruce contends that Attorney Buckley failed to object to improper statements by the prosecutor. Having addressed this contention in subsection "A", this Court will not address this contention again.
¶ 60. After a complete review of the record and briefs, Attorney Buckley's performance, viewed in its entirety, was not deficient under prong one of the Strickland test. Having determined that Attorney Buckley's representation was not deficient, it is not necessary to apply the second prong of the test. This Court does not find that Attorney Buckley failed to provide Bruce effective assistance of counsel. This final assignment of error is without merit.
¶ 61. Finding no error in the instant case, this Court affirms the judgment of the Jones County Circuit Court.
¶ 62. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HINKEBEIN, PAYNE, and SOUTHWICK, JJ., concur.
HERRING, J., not participating.
NOTES
[1] The Lucy Hole is a portion of the Big Creek in Jones County.
[2] Each witness was asked to draw the position of the truck in relation to the car, and in what direction the rifle was pointed.
[3] At the time of the shooting, Sonya drove her car behind Tiger Jean's car. Sonya was the only witness who testified that Bruce aimed his weapon toward Tiger Jean's car.